No. 12221

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

LAWRENCE KAZOR NANOFF,

Defendant and Appellant.

---

Appeal from: District Court of the Eighth Judicial District,
Honorable R. J. Nelson, Judge presiding.

Counsel of Record:

For Appellant:

Berger, Anderson, Sinclair and Murphy, Billings,
Montana.
Arnold A. Berger argued, Billings, Montana.

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana.
J. C. Weingartner, Deputy Attorney General, argued,
Helena, Montana.
J. Fred Bourdeau, County Attorney, Great Falls, Montana.
Michael T. Greely, Deputy County Attorney, argued,
Great Falls, Montana.

---

Submitted: September 19, 1972

Decided: NOV - 9 1972

Filed: NOV - 9 1972

*Thomas J. Kearney*
                                    Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from the district court of the eighth judicial district, county of Cascade. Defendant, Lawrence Kazor Nanoff, was convicted of receiving stolen property.

Approximately one month prior to August 12, 1971, an unidentified informant notified Dectective Jack L. Macek of the Great Falls Police Department that defendant was in possession of some stolen property, specifically, some guns taken in a burglary at Valier, Montana. No action was taken against defendant until August 12, 1971. On that date, a Mrs. Edwin Olsen called the Great Falls Police Department to report that she had been swindled out of $14,000. She gave a description of the swindler, which Detective Macek thought resembled that of defendant. Based on this description, Detective Macek and another officer went to the defendant's residence and asked to talk with him. Defendant allowed the police to enter his residence and upon entering the police saw in the living room four apparently new television sets and some stereo equipment. The police then brought defendant to the police station to check out his story as to the reported swindle of Mrs. Olsen.

Based on the information received from the informant that defendant had stolen guns and on the personal observation of the television sets and stereo equipment, the police sought a search warrant covering defendant's residence. Detective Macek testified before the presiding judge that the police department had a description of guns taken from the burglary in Valier, and also a list of other property taken from around the state, which included televisions and stereo equipment. The judge issued the warrant for the guns particularly and, if finding any of those guns, the police could then take any of the items they found which were on their lists.

Upon arriving at defendant's residence, the police seized a quantity of guns and ammunition, plus the televisions and stereo equipment. Defendant was charged and convicted of receiving stolen property and sentenced to ten years in the Montana state prison, with all but five years suspended.

Defendant enumerates numerous errors on appeal. We will discuss the issue of the search warrant---whether there was probable cause for its issuance and if it was particular enough to meet statutory requirements. A motion to suppress the evidence seized was made, a hearing had, and the trial judge denied the motion. Here, denial of the motion to suppress is the determinative issue.

Section 95-704, R.C.M. 1947, details when a search warrant may be issued and what it must contain:

"Any judge may issue a search warrant upon the written application of any person that an offense has been committed, made under oath or affirmation before him which:

"(a) States facts sufficient to show probable cause for issuance of the warrant,

"(b) Particularly describes the place or things to be searched, and

"(c) Particularly describes the things to be seized."

The statute is clear, it requires that there must be sufficient facts to show probable cause to issue the warrant, that the warrant be particular as to the place to be searched, and particular as to the things to be seized.

The question here is whether this warrant meets Montana's statutory requirements. We first consider Detective Macek's deposition given prior to the issuance of the warrant. In the deposition, he gave these answers to questions asked by the judge:

"Judge Nelson: Do you have a description of the guns taken out of Valier?

"Officer Macek: Yes we have a description over at the

station, Judge.

"Judge Nelson: Do you know what kind of guns you would be looking for?

"Officer Macek: Yes.

"Judge Nelson: Do you have a list on the stolen guns you would be looking for? Do you have a report on stolen TV's and stereos?

"Officer Macek: I would think, Judge, that these TV's came from out of town * * *.

"Judge Nelson: The guns came from the Valier burglary which was out of town. You may have a search warrant. Particularly for these guns, and if you find the guns or any of them, I think you are safe in taking the TV's and stereos so that you can check them out." (Emphasis added).

After this testimony, a warrant was issued and signed by the judge, which in pertinent part, read:

"PROOF BY COMPLAINT, AFFIDAVIT AND DEPOSITION, having been made this date before me by ARTHUR G. MATTEUCCI, Deputy County Attorney in and for the County of Cascade, State of Montana, that there are located certain guns, stolen in a Valier burglary and television sets and stereos stolen out of town located at the residence at 4024 Ella Avenue, front apartment, Great Falls, Montana. See Deposition on file herein for further details." (Emphasis added)

At a hearing on suppression of the evidence, Detective Macek testified; this time stating that there was no burglary in Valier. It is clear from this later testimony that there was no list of any guns taken from a burglary in Valier, Montana. It may be true that the police had a list of guns stolen from small towns outside of Great Falls, but that is not what Detective Macek testified to at the time evidence was given for the issuance of a warrant. The judge specifically asked him if he had such a list, and he said "Yes". The judge then told him he could have a warrant for those guns, and if the guns were found, meaning the guns on the list, then the officer could also take the television sets and stereos. We do not know, from the record, what particular guns the officer had authority to seize. The particular guns were not listed on the warrant; the warrant says to check the deposition; the deposition says the list is at the police station. Here, the

- 4 -

particular list of guns was not placed in the warrant, or anywhere else. A warrant cannot simply state "certain guns", as this warrant did, and meet statutory requirements. It is not an unreasonable burden to require that such a list be produced and placed in the record.

It is clear that erroneous information was given to the district judge, and that this information provided the evidence upon which the warrant was issued. We cannot uphold warrants which are not based on probable cause, and probable cause cannot be established by the use of incorrect information. The only basis for this warrant was upon the pretext of looking for stolen guns. It was not issued because the officers saw four television sets and the stereo equipment. The district judge stated: "You may have a search warrant. Particularly for these guns, and if you find the guns or any of them, I think you are safe in taking the TV's and stereos so that you can check them out." There is no basis for an assertion that the television sets and stereo equipment established probable cause for issuance of the warrant.

From all the facts appearing in the record, it is apparant the warrant was not based or issued on probable cause, since the testimony given to support the warrant was incorrect, therefore the items seized under the power of the warrant should have been suppressed.

The state urges State v. Quigg, 155 Mont. 119, 126, 130,131, 467 P.2d 692, as support for its position that the search warrant was drawn with sufficient particularity. A review of Quigg should demonstrate the distinction between these cases.

In Quigg a search warrant was approved which allowed the police to seize:

> "Any .22 caliber pistol, a gold wristwatch with
> expansion band or any other property or evidence
> they might discover that may connect to the demise
> of Lee Robbins * * *".

On appeal, this Court stated:

"* * * a determination of particular description necessary to meet statutory and constitutional requirements may be made only in view of the facts and circumstances of the particular case. * * *

"In the context, and under the facts and circumstances then known to the law enforcement officers, the language is not, in our view, language that would be considered 'general'. The deceased had been robbed before slain, his automobile stolen and burglarized. Exactly what was taken and with detailed exactness, only the deceased and the criminal or criminals involved knew; but, papers, money, and a gold watch were shown to be missing. Because of the rifled condition of the automobile, the possibility of missing drug items was there but no particulars of what might be missing were known."

In Quigg the particularity of description, under the facts and circumstances shown to exist, were satisfied. But applied here, erroneous information supplied to the magistrate are the facts and circumstances dictating the opposite result.

Defendant raises other issues on appeal but we find it not necessary to discuss them since we have heretofore found that the items seized under the warrant should have been suppressed at the trial. Defendant was convicted of receiving stolen property; to support his conviction it is absolutely necessary to place into evidence the items seized under the improper search. Without this evidence, it is clear there is no case against defendant.

Therefore, we order the conviction reversed and the cause dismissed.

_Wesley Castles_
                              Associate Justice

We Concur:

_____
        Chief Justice

_____

_____
        Associate Justices.

Mr. Justice Gene B. Daly takes no part in this Opinion.

- 6 -